IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| J. MITCH HALL and NATHAN KAY,<br><br>                    Plaintiffs,<br><br>    v.<br><br>L-3 COMMUNICATIONS CORPORATION,  L-3 COMMUNICATIONS VERTEX AEROSPACE, LLC and L-3 COMMUNICATIONS INTEGRATED SYSTEMS L.P.,<br><br>                    Defendants. | NO. 2:15-cv-231-SAB<br><br>PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANTS' MOTIONS FOR PROTECTIVE ORDERS<br><br>09/22/2016<br>With Oral Argument: 10:30 AM |

## I.    Introduction

Plaintiffs, Mitch Hall and Nathan Kay respond to Defendants' motions (Dkt. Nos. 62, 63, 64, and 81[1]) for protective orders.  This Court should deny the motions, disregard the inflammatory allegations made therein, overrule the pertinent discovery objections therein, and order Defendants to produce the discovery requested by the Plaintiffs.

This response is supported by the accompanying declaration of counsel, and records on the docket.

---

[1] Defendants' fourth motion (Dkt. 81) is recycled version of the prior three motions, matters that are addressed herein.

CONSOLIDATED RESPONSE TO MOTIONS
FOR PROTECTIVE ORDERS - 1

## II.  Argument

### A.  L-3s' Motion to Stay Discovery Dkt. No. 62 should be denied.

Defendants' "motion for a protective order" falls well short of the legal standard required of parties seeking such an order.  It is instead, a disguised motion for a stay of discovery, since no provision of the Federal Rules of Civil Procedure prevents discovery from continuing to move forward.  Motions for stays of discovery are disfavored; even a filed motion to dismiss does not establish grounds for staying discovery.  *See Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D.Cal.1990); *Old Republic Title, Ltd. v. Kelley*, C10-0038JLR, 2010 WL 4053371 (W.D. Wash. Oct. 13, 2010).  L-3 has failed to support their motion with the facts and law required to grant such a prohibitive and disfavored order.

Federal Rule of Civil Procedure 26(c) governs the granting of a protective order.  A protective order should be granted only when the moving party establishes "good cause" for the order, and "justice requires [a protective order] to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense [...]." FRCP 26(c).  Conversely, "A party seeking a stay of discovery carries a heavy burden of making a 'strong showing' why discovery should be denied.

CONSOLIDATED RESPONSE TO MOTIONS
FOR PROTECTIVE ORDERS - 2

*Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir.1975). The moving party must show a particular and specific need for the protective order, as opposed to making stereotyped or conclusory statements. *Gray*, 133 F.R.D. at 40; *Skellerup Indus. Ltd. v. City of Los Angeles*, 163 F.R.D. 598, 600 (C.D. Cal. 1995).

**1.  L-3 has failed to meet its heavy burden.**

L-3 provides only a conclusory rational for the exceptional relief they seek: (a) Plaintiffs have no evidence to support their claims against its Corporate Parent; (b) all discovery that L-3/CC refused to respond to is irrelevant; and (c) that further discovery should be stayed until after a related summary judgment is determined.  In other words, L-3 should be allowed to stay all discovery and argue for summary judgement without ever answering any of plaintiffs' discovery requests.   *See* Dkt. No. 62 at 6-8.   Defendants apparently also believe that rather than answering discovery, Mr. Hall should already know which L-3/CC personnel adversely impacted his employment.  *Id.* at 7:18.

First, speculation that L-3 might succeed in their summary judgment is not grounds, under any authority, for issuing an order blocking discovery.  Second, this is the very type of conclusory rationale for a

CONSOLIDATED RESPONSE TO MOTIONS
FOR PROTECTIVE ORDERS - 3

discovery stay that courts routinely reject.  <u>Third</u>, the pending unresolved discovery is directly relevant to the issues brought in L-3s' motion for summary judgment.

L-3 has not made a "strong showing."  In fact, L-3 has failed to show they will suffer any harm or prejudice if they are required to participate in the discovery process dictated by the Federal Rules of Civil Procedure. Dkt. No 62.   Rather, Defendants merely demand a stay of Plaintiffs' discovery requests pending the Court's ruling on a potential motion to dismiss one Defendant.   Critically, L-3 has failed to provide any reason why they should not be subject to the rule against blanket discovery stays.   Defendants have done nothing more than predict, in conclusory fashion, that their motion for summary judgment will succeed (if plaintiffs are improperly denied further discovery on issues relevant to the motion).

The intention of a party to move for summary judgment is not sufficient to justify a stay of discovery. *See e.g. Gray*, 133 F.R.D. at 40. Had the Federal Rules contemplated that such a motion should be used as a basis to stay discovery, the rules would have made it clear.  *Id.*  As the *Gray* court observed:

> In fact, such a notion is directly at odds with the need for expeditious resolution of litigation. Under Rule 33, for instance,

CONSOLIDATED RESPONSE TO MOTIONS FOR PROTECTIVE ORDERS - 4

interrogatories may be served at the same time as the summons and complaint. Since motions to dismiss are a frequent part of federal practice, this provision only makes sense if discovery is not to be stayed pending resolution of such motions.

Furthermore, a stay of the type requested by defendants, where a party asserts that dismissal is likely, would require the court to make a preliminary finding of the likelihood of success on the motion to dismiss. This would circumvent the procedures for resolution of such a motion. *Id.*

Indeed, "[a] stay of discovery pending determination of a motion to dismiss is rarely appropriate when the pending motion will not dispose of the entire case." *Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 3 (D.D.C.2001) (citation and internal quotation marks omitted). L-3s' motion will not dispose of this case. Either L-3/CC will prevail on their motion, and be subject to third-party discovery; or Plaintiffs will prevail, and L-3/CC will be subject to first-party discovery. Either way, Defendants will be subject to discovery.

### 2. Plaintiffs' discovery is relevant.

L-3/CC's Motion for a Protective Order (Dkt. 62) should be denied because the information sought from L-3 is relevant to the issue of whether L-3/CC is a joint employer for the purposes of USERRA. The Motion for a Protective Order is further predicated on the assumption that

L-3/CC is not a "joint employer" of the plaintiffs in this action along with L-3/CIS and/or-3/vertex.  Plaintiffs are entitled to discovery on that issue and plaintiff's discovery to L-3/CC seeks that information.

As a starting point USERRA provides that an employee can be employed in one job by more than one employer.  20 C.F.R. §1002.37.  A joint employment relationship may exist if the parent corporation (here L-3/CC) delegates performance of employment related responsibilities or was a successor in interest to the entity that had control over Plaintiff's employment responsibilities.  To that end, plaintiff sought discovery from L-3 seeking information relevant and proportional to the issue of joint employment.

For example, Plaintiffs' discovery to L-3/CC seeks identities of individuals with military reserve affiliation who applied for employment as pilots with L-3/CC from January 1, 2011 to the present day and whether said individuals were hired by L-3/CC. (Dkt. No. 68-1, p. 19 *citing* PLF Rog. 3).  When discovery shows that L-3/CC, *i.e.* the "parent corporation" rejected a disproportionate amount of military reserve pilot applicants and L-3/CC's "children" also rejected a disproportionate amount of military reserve pilot applications discrimination may be inferred; that the "children"

are following the example of their "parent" in discriminating against reserve pilots in the hiring process.  Tellingly, L-3/CC's outright refusal to produce the documents relating to or associated with the process by which it hires individuals into pilot positions. *Id.* at 19-20 (*citing* PLF RFP 3).

L-3/CC also refuses to state the name of the individual who was in charge of hiring pilots for L-3/CC during the 2014 to 2015 timeframe, refuses to identify who it interviewed regarding Plaintiffs' claims and Defendants' defenses, and refuses to identify its constituents. *Id.* at 20-21, 28 (*citing* PLF Rog. 4, 5).   L-3/CC's answers to these questions would reveal a common core of natural person decision makers the "parent" and "children" corporations relied upon in making the hiring and re-employment decisions that are subject to this lawsuit which goes directly to the issue of whether L-3/CC, L-3/VERTEX, and L-3/CIS are joint employers. 20 C.F.R. § 1002.37; 38 U.S.C. § 4303(4).

L-3/CC refuses to produce the required posters it maintains in the workplace regarding the prevention of discrimination.  *Id.* at 24 (*citing* PLF RFP 11). L-3/CC refuses to produce any complaints it has received relating to military discrimination. *Id.* at 26 (*citing* PLF RFP 14).  L-3/CC's answers to those questions bear upon whether it even follows Congress's

1
2
3
4
5
6
7
8
9
10
11

command that employers maintain the required USERRA rights poster.  38 U.S.C. § 4334.  If L-3/CC fails to heed the Congressional requirement to maintain the USERRA rights poster, then this is circumstantial evidence of discrimination that could be imputed to its "children".  More importantly, discovery of military-related discrimination complaints L-3/CC received will go to the issue of what, if anything, L-3/CC did to resolve those complaints and whether L-3/CC, as the "parent" made sure its "children" were taking care to ensure laws relating to the employment/re-employment of veterans were being followed.

12
13
14
15
16
17
18
19
20
21
22
23
24
25

L-3/CC refuses to list pilot openings that existed during the timeframe Mr. Hall sought re-employment. *Id.* at 31-32 (*citing* PLF Rog. 10 & RFP 17).  If pilot openings existed for which Mr. Hall was qualified then that bears on both Mr. Hall's USERRA failure to re-employ claim and L-3/CC's affirmative defense (as well as the affirmative defenses of L-3/CC's "children") as to whether re-employment of Mr. Hall was "impossible or unreasonable." (Dkt. No. 53, pg. 16, ¶72) USERRA "[s]ection 4313 provides for the order in which a person entitled to reemployment under § 4312 must be reemployed." *Munoz v. InGenesis STGI Partners, LLC*, _ F.Supp.3d _, 2016 WL 1620367, at *11 (S.D. Cal. Apr. 22, 2016).  That

order of priority includes (1) the position Mr. Hall occupied before going on military leave (the "escalator position"), (2) the alternative escalator position, or (3) the nearest approximate position. 38 U.S.C. § 4313(a)(1)&(4). If L-3/CC had an alternate escalator position or an approximate position then the availability of such positions would call its childrens' impossibility/unreasonable affirmative defenses into question as well as its own. (Dkt. No. 54, p. 17, ¶86; Dkt. No. 55, p. 17, ¶85)

**B.    Defendants' Protective Order No. 63, based on "Classified Information" should be denied.**

Litigants "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005). "Relevant information for purposes of discovery is information reasonably calculated to lead to the discovery of admissible evidence." *Id.* "A request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of this action. Discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of this action." *Ragge v. MCA/Universal Studios, Inc.*, 165 F.R.D. 601, 604 (C.D. Cal. 1995).   District courts have broad

discretion in determining relevancy for discovery purposes. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

As the party seeking to avoid discovery, L-3 "bears the burden of making the showing of good cause contemplated by [Rule 26]." *Alexander v. FBI*, 186 F.R.D. 71, 76 (D.D.C. 1998). This requires "a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one." *Id.* This burden is a heavy one in employment discrimination lawsuits, where discovery rules are construed liberally so as to provide the plaintiff with "broad access to the employers' records." *Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 643, 109 S. Ct. 2115, 104 L. Ed. 2d 733 (1989). "A mere showing that discovery may involve inconvenience and expense will not meet this threshold requirement." *Univ. of Mass. v. Roslin Inst.*, 437 F. Supp. 2d 57, 60-61 (D.D.C. 2006) (internal citations omitted). Defendants' motion "Regarding Classified Information" should be denied because it fails under these standards.

Defendants seek to prevent discovery regarding Interrogatory No. 8, RFP Nos. 15 and 18 which request copies of federal contracts held by L-3.

CONSOLIDATED RESPONSE TO MOTIONS
FOR PROTECTIVE ORDERS - 10

Dkt. 68-1 at 26, 28, 32.   Defendants attempt to support their motion alleging that: (a) that these records are not relevant to the litigation; (b) the records are too voluminous; and (c) the records may contain classified information that may not be released by defendants.  Dkt. No. 63 at 9-10. None of these arguments has any merit, nor serve as a basis for a protective order.

**1. Plaintiffs' discovery is relevant.**

First, the contracts, whether they contain classified information, or not, are absolutely relevant to this matter for demonstrating inconsistency with L-3s' own requirements.  The standard of relevance in discovery is "minimal." *See Cobell v. Norton*, 226 F.R.D. 67, 94 (D.D.C. 2005). "Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

The requests that L-3 challenges seek the very records which the Defendants, themselves, placed directly at issue in its defense of this lawsuit.   Defendants acknowledge this to the court on May 31, 2016, when their attorney, Mr. Hineline told the court during the scheduling conference that Defendants had "secret contracts" that he had concerns

with regarding discovery.  Dkt. No. 63 at 6.  Both of Plaintiffs' counsel immediately followed up with Mr. Hineline that day to structure an approach to the issue, to no avail.  Jarrard Decl. at ¶ 15-25.   Mr. Hineline refused to respond to multiple follow-up emails and would not engage in any collaborative effort to resolve the alleged issue. *Id.*   In responding to discovery, L-3 objected to the requests and produced nothing.  Dkt. 68-1 at 26, 28, 32.   Later, during the resulting meet-and-confer process, Hineline admitted that certain contracts did not contain secret information and that seven (7) contracts for the programs in which Mr. Hall worked, or that Mr. Kay applied to, were relevant to the matter, but may contain classified information.   Jarrard Decl. at 17: 7.[2]  In any event, Defense counsel could not know this for certain, however, because he had not seen the contracts.  *Id.*  Defendants refused to produce a single contract. In its briefing (but not in discovery), Defendants further admit they are required to follow the minimal federal requirements imposed on Federal Contractors under 38 U.S.C. § 4212. Dkt. 63 at 5.

Second L-3's complaint, that there is no individual right of action

---

[2] Hineline alleges these efforts constitute abrasive discovery tactics, or that Plaintiff's counsel demanded Defendants break the law. Dkt. 68. These absurd allegations are belied by the fact the Mr. Jarrard has directed Defendants' counsel to the proper procedures throughout this litigation.  *See* Jarrard Decl. ¶¶ 15 and 22; Dkt. 70 at 5n2.

CONSOLIDATED RESPONSE TO MOTIONS
FOR PROTECTIVE ORDERS - 12

under the VEVRAA is a strawman argument.  L-3s' federal contracts and attendant requirements are relevant to Mr. Hall's and Mr. Kay's USERRA discrimination claims because they will show inconsistencies with L-3's own requirements.  Section 4311 of the USERRA specifically prohibits employers from discriminating against employees on the basis of military service.   In USERRA cases, the "factual question of discriminatory motivation or intent may be proven by either direct or circumstantial evidence."  *Sheehan v. Dep't of the Navy*, 240 F.3d 1009, 1014 (Fed. Cir 2001).  Discriminatory motivation under the USERRA may be "reasonably inferred from a variety of factors" such as "inconsistencies between the proffered reason and other actions of the employer" and "hostility towards members protected by the statute together with knowledge of the employee's military activity."  *Id.*  In determining whether the employee has proven that his protected status was part of the motivation for the agency's conduct, all record evidence may be considered, including the agency's explanation for the actions taken.  *Id.*

Likewise, section 4212 of the Vietnam Era Veterans' Readjustment Assistance Act of 1974 (VEVRAA), 38 U.S.C. § 4212, is the immediate

predecessor of USERRA[3] and it also protects returning service members from discrimination and specifically requires an employer to take affirmative action to employ and advance qualified covered veterans. 41 C.F.R. § 60-300.5(a). As recently separated veterans, and military reservists, both Mr. Kay and Mr. Hall are protected under the VEVRAA. 38 U.S.C. § 4212(a)(3)(A); 41 C.F.R. § 60-300.2(q) and USERRA 38 U.S.C. § 4311. They occupy the same protected status under both statutory schemes. Mr. Hall and Kay are entitled to those records to demonstrate L-3s' actions in this case are inconsistent with its own federal contract requirements.

### 2. Plaintiffs' discovery is relevant to proving pretext.

Further, Mr. Hall's and Mr. Kay's complaint alleges pretext, (Dkt. 14 at ¶ 2.87) which all Defendants deny (Dkt. Nos. 48 at ¶ 59, 49 at ¶ 72 and 50 at ¶74. Accordingly, Plaintiffs are entitled to gather evidence, including their federal contracts, which demonstrate that the reasons for defendants' adverse actions, as given by L-3, are a pretext. *See*

---

[3] "USERRA's predecessor was the Vietnam Era Veterans' Readjustment Allowance Act of 1974 ("VEVRAA"), which was defined by the Supreme Court as to be "enacted for the significant but limited purpose of protecting the employee-reservist against discrimination like discharge and demotion, motivated solely by reserve status." *Hance v. Norfolk S. Ry. Co.*, 2006 U.S. Dist. LEXIS 32276 (E.D. Tenn. May 17, 2006) (*citing Monroe v. Standard Oil Co.*, 452 U.S. 549, 559, 101 S.Ct. 2510 (1981).

*Velazquez-Garcia v. Horizon Lines of P.R., Inc.*, 473 F.3d 11, 17 (1st Cir. P.R. 2007)("employer must show, by a preponderance of the evidence, that the stated reason was not a pretext; that is, that "the action would have been taken in the absence of [the employee's military] service." 38 U.S.C. § 4311(c)"); *c.f. Zhu v. N. Cent. Educ. Serv. Dist.-ESD 171*, No. 2:15-CV-00183-JLQ, 2016 WL 4445758, at 12 (E.D. Wash. Aug. 22, 2016)(holding the failure to follow 41 C.F.R. § 60 and failure to report Plaintiff's complaints raises a question of fact as to whether ESD 171's reasons were pretext.)   "In other words, a defendant must prove the nonpretextual, permissible reason for termination notwithstanding uniformed service as an affirmative defense." *Wagner v. Novartis Pharms. Corp.*, 565 F. Supp. 2d 940, 947 (E.D. Tenn. 2008)(citations omitted).   Pretext can be proven indirectly, by showing the employer's explanation is not credible because it is internally inconsistent or otherwise not believable, or directly, by showing unlawful discrimination more likely motivated the employer. *Kelleher v. Fred Meyer Stores Inc.*, 302 F.R.D. 596, 598 (E.D. Wash. 2014).   In *Wagner,* the court held that evidence that employer failed to follow its own policies and procedure was circumstantial evidence of discrimination. *Wagner v. Novartis Pharms.*

CONSOLIDATED RESPONSE TO MOTIONS
FOR PROTECTIVE ORDERS - 15

*Corp.*, 565 F. Supp. 2d at 947.    Here, the contractual VEVRAA requirements that apply to Mr. Hall and Mr. Kay are evidence the explanations proffered by L-3 are both inconsistent with their own requirements and unworthy of credence.

Finally, Defendant tacitly admit that these federal contracting requirements are relevant to this case, but refuse to produce the contracts that contain them.    Dkt. 63 at 5-6, (noting the agreement to stipulate to some of the pertinent requirements, but refusing to produce the records.). Contrary to Defendants' claims, a stipulation regarding the requirements is not sufficient for discovery.    The actual records are needed for examination.    In particular, when we are dealing with several different contracts in different programs,  an examination of each contract and its requirements is therefore needed to determine whether there is circumstantial evidence of discrimination against Mr. Kay and Mr. Hall.  .

### 3. L-3 does not have standing to assert a back-door State's Secret Privilege.

Defendants allege they may not produce discovery because, "by law, L-3 cannot turn over many [tellingly, not all] contracts including those for the pertinent S4, JM and MARSS programs, without prior authorization from the government."  Dkt. No 63 at 10.  In other words, L-3 (a private

corporation) seeks to assert the State's Secret Privilege.   Their motion should be denied.

First, "The privilege belongs to the Government and must be asserted by it; it can neither be claimed nor waived by a private party. *United States v. Reynolds*, 345 U.S. 1, 7-8 (U.S. 1953).  As discussed by the *Reynolds* court:

> It is not to be lightly invoked.  There must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer. *Id.*

There is no formal claim of privilege in this case by the U.S. and L-3, as a private party, may not assert the privilege. *Id.*  Defendants know this because they were told as much, with citation to authority, on numerous occasions.  Accordingly, they have adopted a back-door approach to the matter to avoid the required steps of giving notice to the U.S. and participating in this court's review of the records.  *See Infra.*

Second, Defendants have failed to follow any of the required steps that would allow them to withhold the alleged classified contracts.  "When considering a motion to withhold classified information from discovery, a district court must first determine whether, pursuant to the Federal Rules of Criminal Procedure, statute, or the common law, the information at

CONSOLIDATED RESPONSE TO MOTIONS
FOR PROTECTIVE ORDERS - 17

issue is discoverable at all.    *United States v. Sedaghaty*, 728 F.3d 885, 904 (9th Cir. Or. 2013).  "If the material at issue is discoverable, the court must next determine whether the government has made a formal claim of the state secrets privilege, "'lodged by the head of the department which has actual control over the matter, after actual personal consideration by that officer.'" *Id.* (citation omitted.)  In addition, "[t]he asserting party, as in any case where a privilege is claimed, must sufficiently identify the documents so as to afford the requesting party an opportunity to challenge the assertion of privilege." *Thomas v. Guffey*, 2015 U.S. Dist. LEXIS 31381, 5-7 (E.D. Cal. Mar. 13, 2015) *citing* Miller *v. Pancucci*, 141 F.R.D. 292, 300 (C.D. Cal. 1992).

L-3 has failed to follow any of these steps.  L-3 has failed to inform the U.S. of this matter and has not identified any of the alleged 7000 contracts it states it is withholding.  Dkt. 68-1 at 26, 28, 32.

### 4. L-3 exaggerates what contracts are responsive to Plaintiff's discovery requests.

L-3 also argues that is has over 7000 contracts that are responsive to Plaintiffs' discovery request, therefore, Plaintiff's requests are too burdensome.    Indeed, this conclusory statement is exaggerated.    As noted above, L-3 admitted that at least 7 of those contracts are relevant

and related to the Plaintiffs' claims, but Defendant still refuse to produce even those records. Further, those few contracts have been repeatedly requested by plaintiffs' counsel, to no avail.  Jarrard Decl. at 17: 13-25.

**C.    Defendants' Protective Order No. 64 regarding names of applicants and pilots, employment and hiring policies, and attorney client privilege and work product should be denied.**

Defendants object to providing Plaintiffs the identities of fellow applicants and pilots because (a) Plaintiffs do not have a need to know; (b) there are exaggerated concerns for safety; and (c) the requests are overbroad.  Dkt. No. 64 at 7-8.   These claims are without merit.

As noted above, L-3 bears the burden of making the showing of good cause contemplated by Rule 26, which requires "a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one."  *Alexander* 186 F.R.D. at 76 (D.D.C. 1998).   As previously noted, this burden is a heavy one in employment discrimination lawsuits, where discovery rules are construed liberally so as to provide the plaintiff with "broad access to the employers' records."  *Atonio*, 490 U.S. at  643.

First, Mr. Kay and Hall are absolutely entitled to know the identity of their fellow applicants --- without the anonymity barriers imposed by defendants.  Rule 26(b)(1) obligates litigants to disclose the "**identity** and location of persons who know any discoverable matter."  Furthermore, it is without dispute that personnel and comparators information, including identities, are discoverable in USERRA discrimination cases.  *See Bobo v. UPS*, 665 F.3d 741, 751 (6th Cir. Tenn. 2012)  In *Bobo* the Sixth Circuit reversed a lower court's discovery order, holding the order was contrary to law and improperly restricted discovery scope by allowing the company to unilaterally determine who was similarly situated --- same as the circumstances in this case.

In *Wagner v. Novartis Pharms. Corp.*, 2008 U.S. Dist. LEXIS 11089, 4-5 (E.D. Tenn. Feb. 14, 2008) the court held that in a § 4311, discrimination case "the proof in this case will necessarily be fact specific to the positions applied for and the qualifications of the various candidates, and selectees, for the positions."  Here, Plaintiffs only seek relevant information, *i.e.* the candidate pools and selectees for positions to which they may have applied.  Defendants' outright refusal to provide the applicant and pilot information is unjustified.

<u>Second</u>, Defendants' fantastic claims of danger to L-3 employees or applicants are overblown and can be easily addressed by this court, without a protective order or denying the Plaintiff access to the relevant records.   Fed. R. 5.2 (e)(1) allows this court to direct the "redaction of additional information" that is filed in this case, *e.g.*  the redaction of the names of all third-party applicants or other employees from filings in the public records.

<u>Third</u>, the requests are neither overbroad nor a burden. Defendants have already identified some of the applicants and fellow pilots and provided some of the requested information, but redacted the names of those persons to stall discovery.  Dkt. No. 64 at 3.

Defendants' other argument, that Mr. Hall and Kay should "know all the name of the pilots in his program," is also a red herring.  Dkt. No 64 at 3.  Neither Mr. Hall nor Mr. Kay could possibly know who else applied for the jobs they applied to, or with regard Mr. Kay's applications what pilots were hired.   On the one hand, Defendants provide some candidate's information, but refuse to provide the rest.  Defendants withholding of this discovery is completely unjustified.

<u>Lastly</u>, Defendants' assertions about trade secrets are unsupported

by any factual basis or analysis, and are equally without merit.  In *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465 (9th Cir. 1992), the Court held that to determine whether a protective order for trade secrets is appropriate, courts must balance conflicting interests.

> The party requesting a protective order must make a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one. Such a party must demonstrate that failure to issue the order will work a clearly defined harm.

10A Fed. Proc. Law. Ed. § 26:282 (emphasis added); *see also Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).   In *Beckman*, the Court also stated that "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." 996 F.2d at 476 (*quoting Cipollone v. Ligget Group, Inc.*, 785 F.2d 1108, 1121 (3rd Cir. 1986)).

Here, L-3s' motion for a protective order is deficient given these guidelines.  Specifically, L-3 simply concludes, without analysis, that its employment and hiring policies and employee handbooks should be protected as proprietary trade secrets. Dkt. No. 64 at 8. Defendants fail to allege any harm or prejudice.  *Id.*  On the other hand, Plaintiffs are entitled to discovery that would show defendants failed to follow their own

practices and policies, and that L-3's explanations for its actions are internally inconsistent or otherwise not believable.   *See Kelleher* 302 F.R.D. at 598; *Wagner* 565 F. Supp. 2d at 947.   The protective order Defendants seek is, thus, not narrowly drawn. "[A] blanket order…is by nature over-inclusive." *Beckman,* 966 F.2d at 476.  And must be denied.

## D.    Defendants' attorney client privilege and work product objections are without merit.

Rule 26(b)(1) obligates litigants to disclose the "identity and location of persons who know any discoverable matter."   Plaintiffs' interrogatory No. 5, states, "Please identify any individual(s) that Defendant or its agents have interviewed concerning this case, the events relevant to this case, or Defendant's defenses to Plaintiff's claims."   Dkt. 68-1 at 21. Defendants allege this information is attorney-client privileged.   But, refuse to list any related information in a privilege log.  It is not privileged and the protective order should be denied.

First, the identities of witnesses are discoverable. *See Castle v. Sangamo Weston, Inc.,* 744 F.2d 1464, 1467 (11th Cir. 1984); Many courts have found that the identities of even confidential witnesses are discoverable. *See In re Netbank, Inc. Sec. Litig.,* Case No. 07cv2298, 259 F.R.D. 656, 2009 U.S. Dist. LEXIS 69031, 2009 WL 2461036 at *17 (N.D.

Ga. Aug. 7, 2009) ("The Federal Rules of Civil Procedure provide that '[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defenses-- including. . .the identity and location of persons who know of any discoverable matter"); *Hoffman v. United Telecommunications, Inc.,* 117 F.R.D. 440, 443-44 (D. Kan. 1987).

Numerous other courts have consistently held that the names and addresses of individuals interviewed by counsel "who have knowledge of the facts alleged in the complaint are not protected from disclosure by the work product doctrine." *In re Theragenics Corp. Secs. Litig.*, 205 F.R.D. 631, 634-36 (N.D. Ga. 2002) (the names and addresses sought by defense counsel were not protected by the work product doctrine); *In re Aetna Inc. Sec. Litig., No. CIV.A.MDL*. 1219, 1999 U.S. Dist. LEXIS 8038, 1999 WL 354527, at *3 (E.D. Pa. May 26, 1999) (the identities of people referenced in the complaint are not protected by the work product doctrine as it "will not reveal the mental impressions, conclusions, opinions, or legal theories of [] attorneys"); *United States v. Amerada Hess Corp.*, 619 F.2d 980 (3d Cir. 1980) (because the work product content of the list of individuals with knowledge of discoverable information was minimal, the identities were not protected work product); *Am. Floral Servs., Inc. v.*

CONSOLIDATED RESPONSE TO MOTIONS
FOR PROTECTIVE ORDERS - 24

*Florists' Transworld Delivery Ass'n,* 107 F.R.D. 258, 260-61 (N.D. Ill. 1985) (plaintiff had to identify the list of witnesses interviewed).

Second, Defendants cite *Laxalt v. McClatchy*, 116 F.R.D. 438 (D. Nev. 1987) for the proposition they may not be forced to disclose the identity of individuals they have interviewed.    But, that case is distinguishable and has no bearing here because it dealt with a defendant reporter in a defamation case who refused to disclose confidential sources for news articles, not alleged privilege in this matter.    The other case cited by Defendants, *In re MTI Tech. Corp. Secs. Litig. II*, 2002 U.S. Dist. LEXIS 13015 (C.D. Cal. June 13, 2002), is equally off the mark.  The plaintiff in *In re MTI Technology* was not required to identify which six individuals were interviewed out the list of names originally provided under Rule 26 because the mental impressions of counsel could be inferred.  *Id.*  However, the court did not relieve a party from making the required disclosure of the identity of individuals who possessed discoverable material in accordance with Rule 26.  Instead, the court specifically stated that the identity of all individuals with knowledge of discovery matter is "not" protected.  *Id.*

Third, defendants have failed to show attorney-client privilege could

apply here.  To show the applicability of the attorney-client privilege, a claimant must show the following eight essential elements: "'(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.'" *A. Farber & Ptnrs., Inc. v. Garber*, 234 F.R.D. 186, 192-193 (C.D. Cal. 2006) (citations omitted).  Because the attorney-client privilege is in derogation of the search for truth, it is "narrowly and strictly construed." *Id.* "Moreover, "[t]he burden is on the party asserting the privilege to establish all the elements of the privilege[,]" and an assertion of a privilege without evidence to support it will not prevail.  *Id. See also Saxholm AS v. Dynal, Inc.*, 164 F.R.D. 331, 333 (E.D.N.Y. 1996) (meeting the burden of establishing the applicability of the attorney-client privilege "requires the submission of affidavits or other competent evidence to establish sufficient facts to prove the applicability of the privilege.  Conclusory or *ipse dixit* assertions are not enough.").

Defendants' affidavits in regard to attorney-client privilege are woefully inadequate.  None of the affidavits address these eight factors.

*See* Dkt. Nos. 66, 67 at ¶ 16, 68 at 25.  Each witness merely parrots the statement of the other that they are not aware of any interviews.  Further, Mr. Hineline's declaration only states his conclusions about attorney-client privilege.  Dkt. 68 at ¶ 25.

Similarly, L-3s' declarations fail to establish that the requested materials are work product.  A party claiming work product immunity has the burden of proving the applicability of the doctrine. *United States v. City of Torrance*, 163 F.R.D. 590, 593 (C.D. Cal. 1995); *see also Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.*, 215 F.R.D. 466, 475 (S.D. N.Y. 2003) (holding declaration or affidavit must support work product claim for documents listed solely as work product on privilege log).  "Three conditions must be met to earn work product protection.  The material must (1) be a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by his representative.'" *Id.*  Neither, Mr. Nance, nor Mr. Dangelo address any of these required facts.  *See* Dkt. Nos. 66, 67.  Further, Mr. Hineline's declaration only states his conclusions about attorney-client privilege. Dkt. 68 at ¶ 25.

CONSOLIDATED RESPONSE TO MOTIONS
FOR PROTECTIVE ORDERS - 27

**E.    Plaintiffs, not Defendants, are entitled to fees.**

Fed. R. Civ. P 37(a)(5) governs the award of expenses to a party against whom a protective order is sought but not obtained.   Fed. R. Civ. P. 26(c)(3).    A Court must require an unsuccessful movant to pay reasonable expenses incurred in opposing the motion, including attorney's fees, unless the motion was substantially justified.   Again, Defendants' motions are not substantially justified.   *Supra.*   <u>First</u>, Plaintiffs are not the movants in these motions for protective orders.   <u>Second</u>, Defendants offer no authority or analysis whatsoever for their position that Mr. Jarrard's alleged conduct (disputed as it is) could ever rise to the level of sanctionable conduct under the civil rules or any other set of rules. Indeed, the Defendants' weaving of parsed, partial, and out-of-context statements, throughout Defendants' briefing, together with their deliberate omission of full communications, is in perfect concert with the exaggerated reactions, overblown characterizations, and uncivil behavior that Mr. Jarrard has vehemently opposed throughout this litigation.

Rather, as the facts show, Plaintiffs' efforts in obtaining discovery in this case have only been stymied by two things: (1) Defendants' counsel's outright refusals to produce records; and (2) refusals to cooperate in

CONSOLIDATED RESPONSE TO MOTIONS
FOR PROTECTIVE ORDERS - 28

resolving discovery matters.  Jarrard Decl. ¶¶ 1-30.  Finally, the mere fact that Mr. Hineline does not like Mr. Jarrard's direct, or frank communication style, is not a basis for sanctions.  In fact, every single email from Mr. Jarrard to opposing counsel states, "Thanks, Have a nice day."  *Id.*  And despite, Mr. Hineline's yelling, berating, unprofessional and hostile behavior, Mr. Jarrard has abstained from reciprocating such behaviors.  Jarrard Decl. at ¶¶ 13-15 and 27-29.

**F.  Defendants Motions were waived by serving discovery objections first, engaging in the resolution process, and then belatedly filing Dkt. Nos. 62, 63, 64, and 81.**

A party opposing discovery has only two options: (1) timely objecting to producing the discovery (which L-3 chose in this case), or (2) timely seek a protective order (which L-3 failed to do).  *See* 8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §2035 (3d ed. 2013); *see also Brittain v. Stroh Brewery Co.*, 136 F.R.D. 408, 413 (M.D.N.C. 1991); *Nestle Foods Corp. v. Aetna Cas. and Sur. Co.*, 129 F.R.D. 483, 487 (D.N.J. 1990). "Under this line of authority, a motion for a protective order is timely if made prior to the date set for producing discovery." *Lexington Ins. Co. v. Swanson*, 2006 WL 3474185, 2 (W.D. Wash. 2006) *quoting* 6 Moore's Federal Practice at §26.102.   "The failure

to timely move for a protective order constitutes grounds for denying the same." *Brittain*, 136 F.R.D. at 413.  As such, a party opposing discovery that chooses to timely file objections, waives the option to proactively move for a protective order.  Here, L-3 wants two bites at every apple. Instead of following the procedure, when it does not get the result it wants in discovery resolution, L-3 seeks protective orders.  This backwards approach has caused nearly two months delay in getting Defendants' discovery objections to the court, only prejudices Plaintiffs by that delay, and wasted counsel's time in the meet- and-confer conferences and continues to waste time in discovery.  For example, Defendants served answers and objections to Plaintiffs' discovery while simultaneously while serving another Motion for Protective order (Dkt. No. 81, a literal repeat of its prior motions). *Ibid.*

## III. CONCLUSION

Defendants' motion should be denied and Plaintiffs should be awarded their fees and costs for responding to these improper motions.

DATED this August 30, 2016.

*/s Thomas G. Jarrard*
The Law Office of Thomas G. Jarrard, PLLC
1020 N. Washington
Spokane, WA 99201

CONSOLIDATED RESPONSE TO MOTIONS
FOR PROTECTIVE ORDERS - 30

Telephone: (425) 239-7290
tjarrard@att.net

*/s Matthew Z. Crotty*
MATTHEW Z. CROTTY
Crotty & Son Law Firm, PLLC
905 West Riverside, Suite 409
Spokane, WA 99201
Telephone: (509) 850-7011
matt@crottyandson.com

*/s Michael B. Love*
MICHAEL B. LOVE
Michael Love Law Firm, PLLC
905 W. Riverside, Suite 409
Spokane, WA 99201
Telephone: (509) 212-1668
mike@mikeallovelaw.com

*Attorneys for Plaintiffs J. Mitch Hall and Nathan Kay*

CONSOLIDATED RESPONSE TO MOTIONS
FOR PROTECTIVE ORDERS - 31

## **CERTIFICATE OF SERVICE**

I certify that on August 30, 2016, I caused the forgoing and accompanying declaration to be electronically filed with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the all counsel of record.

I certify that I have caused to be transmitted via U.S. Mail or email the document to the following non-CM/ECF participant/s: None

/s *Thomas G. Jarrard*
Law Office of Thomas G. Jarrard, PLLC
1020 North Washington Street
Spokane, WA 99203
Telephone:  425 239-7290