1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

## UNITED STATES DISTRICT COURT
## EASTERN OF WASHINGTON

| | |
|---|---|
| J. MITCH HALL and NATHAN KAY, on behalf of themselves and similarly situated individuals,<br><br>               Plaintiffs,<br> v.<br><br>L-3 COMMUNICATIONS CORPORATION, L-3 COMMUNICATIONS VERTEX AEROSPACE, LLC and L-3 COMMUNICATIONS INTEGRATED SYSTEMS L.P.,<br><br>           Defendants. | NO. 2:15-cv-231-SAB<br><br>THIRD AMENDED COMPLAINT AND DEMAND FOR TRIAL BY JURY<br><br>EXEMPT FROM FILING FEES UNDER 38 U.S.C. § 4323(h)(1) |

Plaintiffs Joseph Mitch Hall and Nathan Kay (collectively "Named Plaintiffs"), through their attorneys, and on behalf of Nathan Kay and other similarly situated National Guard and Reserve members who applied to work as pilots at Defendants L-3 Communications Corp., L-3 Communications Vertex Aerospace, LLC, and/or L-3 Communications Integrated Systems L.P.

THIRD AMENDED COMPLAINT - 1

Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001

(collectively, "Defendants" or "L-3"), but were denied initial employment due to their status or service in the National Guard or Reserves in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), and/or the Washington Law Against Discrimination ("WLAD"), and allege:

## **INTRODUCTION**

1.1    This is an action brought pursuant to USERRA, 38 U.S.C. § 4301 *et seq.*, and the Washington Law Against Discrimination ("WLAD"), on behalf of a class of National Guard and  Reserve  members who applied to work as pilots at L-3, but were denied employment because of their membership or service in the National Guard or Reserves.

1.2    L-3 is one of the ten largest defense contractors in the United States, and is a prime contractor in intelligence, surveillance, and reconnaissance systems, aircraft sustainment, simulation and training, and detection systems.   L-3's customers include the Department of Defense, U.S. Government intelligence agencies, the Department of Homeland Security, foreign governments, and domestic and international commercial customers.   In 2015, L-3 earned $10.466 billion in sales, including $6.973 billion in Department of Defense contracts and $7.291 billion in U.S. government contracts overall.    At the end of 2015, L-3

THIRD AMENDED COMPLAINT - 2

Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001

employed about 38,000 full-time and part-time employees, 86% of which were in the United States.

1.3    In this action, Plaintiffs Hall and Kay allege that they and other members of the Proposed Class were subjected to and injured by the same pattern, practice or policy of L-3 preferring to hire non-lateral pilot applicants who *are not* current or active National Guard or Reserve members over non-lateral pilot applicants who *are* current or active National Guard or Reserve members.

1.4    Plaintiffs allege that L-3's pattern, practice, or policy violates USERRA's anti-discrimination provisions, 38 U.S.C. § 4311, with respect to all members of the Proposed Class, and violates the Washington Law Against Discrimination, RCW 49.60.180, with respect to members of the Proposed Class who sought work from or in the State of Washington.  Plaintiffs seek an injunction barring L-3 from continuing to engage in this unlawful pattern, practice, or policy that is harming National Guard and Reserve members, and Plaintiffs seek compensation for the National Guard and Reserve members who have been denied employment, earnings, and benefits as a result of such unlawful conduct.

THIRD AMENDED COMPLAINT - 3

Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001

## II.    PARTIES AND JURISDICTION

2.1    Plaintiff JOSEPH "MITCH" HALL ("Mr. Hall") resided in Spokane, Washington during all times relevant to this case.

2.2    Plaintiff NATHAN KAY ("Mr. Kay") resided in Spokane, Washington during all times relevant to this case.

2.3    Defendant, L-3 COMMUNICATIONS CORPORATION ("L-3/CC") is a Delaware corporation that is licensed to conduct business in this district, maintains a Washington State Uniform Business Identifier 601800495 and Washington State Tax Identification Number (same), maintains a Washington State Reseller Permit Number A05 9973 17, maintains a business location at 621 W. Malon Street, Spokane, WA 99201.   Upon information and belief L-3/CC transacts business within this District from that address, owns, uses or possesses personal property at that address, serves the state's markets, contracts to insure property and risk at that address, and is registered to do business in Washington State and has designated CT Corporation in Olympia, Washington as its registered agent with the Secretary of State.   L-3/CC had control of the employment opportunities of Mr. Hall and Mr. Kay, through its agents, and is a "private employer" as defined by 38 U.S.C. § 4303(4) and 38 U.S.C. § 4323(a), (b), (c), and (h).

THIRD AMENDED COMPLAINT - 4

Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001

2.4   L-3/CC is the parent company of Defendants L-3 COMMUNICATIONS VERTEX AEROSPACE ("L-3 VERTEX") and L-3 COMMUNICATIONS INTEGRATED SYSTEMS ("L-3/CIS").

2.5   Each Defendant, L-3/CC, L-3 VERTEX and L-3/CIS shares a common management, interrelation between operations, centralized control of labor relations, and common ownership.

2.6   L-3 VERTEX is a business unit or "division" within L-3/CIS.

2.7   Defendant L-3 VERTEX is a Delaware corporation that is licensed to conduct business in this District, has employees (including Mr. Hall) who reside in this District, maintains a Washington State Uniform Business Identifier 602140626 and Washington State Tax Identification Number (same), maintains a Washington State Reseller Permit Number A08 089317, maintains a place of business located on Fairchild Air Force Base, a military installation located within this district.  Upon information and belief, L-3 VERTEX transacts business within this District from that address, leases space from the United States at that address, contracts with the United States from that address, owns, uses or possesses personal property at that address, serves the state's markets, contracts to insure property or risk at that address, is registered to do business in Washington State and has designated CT Corporation in Olympia, Washington as its registered

THIRD AMENDED COMPLAINT - 5

Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001

agent with the Secretary of State.  L-3 VERTEX had control of the employment opportunities of Mr. Hall, through its agents, and was a primary decision maker regarding Defendants' violation of both Named Plaintiffs' rights and is a "private employer" as defined by 38 U.S.C. § 4303(4) and 38 U.S.C. § 4323(a), (b), and (c).

2.8    Defendant L-3/CIS is a Delaware Limited Liability Partnership, has employees (including Mr. Hall) who reside in this District, maintains a business unit located on Fairchild Air Force Base, within this District, had control of the employment opportunities of both Named Plaintiffs, through its agents, and was a primary decision maker regarding Defendants' violation of both Named Plaintiffs' rights and is a "private employer" as defined by 38 U.S.C. § 4303(4) and 38 U.S.C. § 4323(a), (b), and (c).

2.9    Each Defendant, L-3/CC, L-3 VERTEX and L-3/CIS maintains continuous and systematic interaction in Washington State.

2.10   Each Defendant, L-3/CC, L-3 VERTEX and L-3/CIS and its agents, had knowledge that Mr. Hall and Mr. Kay were residents of Washington State (and this District) during the time frame relevant to this case.

THIRD AMENDED COMPLAINT - 6

Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001

2.11 Each Defendant, L-3/CC, L-3 VERTEX and L-3/CIS and its agents intentionally directed conduct towards the Named Plaintiffs here in Washington State, knowing that its conduct would cause harm to the Named Plaintiffs.

2.12 Each Defendant, L-3/CC, L-3 VERTEX and L-3/CIS and its agents executed agreements, and exchanged employment, pay, retirement, leave and tax reporting information and documents with Mr. Hall in this state and District through a secure (not passive) server and internet connection accessed by Mr. Hall via password, with permission and credentials provided for by Defendants for those purposes, and paid Mr. Hall for work that Defendants directed him to performed in Washington State and in this district including travel and reimbursements.

2.13 Hereinafter, unless specified otherwise, Defendants are identified collectively as "L-3".

2.14 The U.S. District Court for Eastern District of Washington has subject matter jurisdiction over this matter pursuant to 38 U.S.C. § 4323(b)(3), and 28 U.S.C. § 1331.

2.15 This Court has supplemental jurisdiction over Mr. Kay's state law claims pursuant to 28 U.S.C. § 1367, as his state law claims are so related to his federal claims in this action such that they form the same case or controversy.

THIRD AMENDED COMPLAINT - 7

Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001

2.16    This Court has personal jurisdiction over Defendants because the claims and causes of action in this action arise from or are connected with its extensive business activities in Washington State.

2.17    Venue is proper in this District under 38 U.S.C. § 4323(c)(2), because the Defendants maintain places of business in this District, as well as under 28 U.S.C. 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

### III.    FACTS

3.1    Plaintiffs incorporate the above paragraphs.

**(Mitch Hall)**

3.2    Mr. Hall is a veteran of the U.S. Air Force and Washington Air National Guard.

3.3    Mr. Hall currently serves in the Washington Air National Guard and did so at all times relevant to this action.

3.4    During early 2013, Mr. Hall, while residing in the State of Washington, applied for employment with L-3.

3.5    During the May 2013 timeframe, Chris Root (L-3 Chief Pilot) telephoned Mr. Hall at Mr. Hall's Washington residence, requested additional employment

THIRD AMENDED COMPLAINT - 8

Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001

information, and conducted Mr. Hall's employment interview.  During the pre-employment process, Hall was listed as "recently separated veteran."

3.6    Approximately one week later, Mr. Root telephoned Mr. Hall at Mr. Hall's Washington residence, and offered Mr. Hall employment.

3.7    Thereafter, L-3 sent emails to Mr. Hall, while Mr. Hall was in Washington, containing hiring paperwork.  Mr. Hall, while in Washington, completed the paperwork and returned it to L-3.

3.8    L-3 VERTEX hired Mr. Hall in July 2013 to work as a pilot in L-3's S4 Program.  Upon information and belief, Mr. Hall is concurrently, and or at times, alternately employed by L-3/CIS, although his supervisors and reporting structure remained the same throughout the relevant periods as identified in this amended complaint.

3.9    On July 15, 2013, L-3 delivered an Alternative Dispute Resolution agreement with L-3/CIS and Mr. Hall, at his home residence.  Mr. Hall executed that agreement and submitted it to L-3 through its secure web site.  The agreement states that it "does not cover USERRA claims."

3.10   In August 2013, L-3 required Mr. Hall to obtain a U.S. Passport for his employment.  L-3 directed Mr. Hall to obtain a passport, and paid him for that work he performed in Washington State.

THIRD AMENDED COMPLAINT - 9

3.11   The L-3 S4 Program provides contract aviation support of U.S. Government operations in Afghanistan.

3.12   Playing roles in Mr. Hall's employment with L-3 were Kathy Holland, the L-3 S4 Program's "Chief Scheduler"; Mark Barreault and Dave Akers, individuals who formerly (Barreault) and currently (Akers) serve as the S-4 Program's "Program Manager'"; Chris Root, the S4 Program's "Chief Pilot'"; Alan Campbell, one of the S4 Program's two "Lead Pilots"; and Randall Gladney, the S4 Program's "Site Lead."

3.13   As the Chief Pilot, Mr. Root hires people into the S4 Program and works with Kathy Holland in that capacity.

3.14   As a Lead Pilot, Mr. Campbell is in charge of day-to-day scheduling with regard to the S4 Program's operations in Afghanistan.  Lead Pilots report to the Chief Pilot and the Chief Pilot reports to the Program Manager.

3.15   Pilots employed with the S4 program rotate from their homes of record (Spokane, in Mr. Hall's case) to Afghanistan to perform their duties as government aviation contractors and, when their tours (which span one to three months) end, they rotate home and take leave until their next tours begin.

THIRD AMENDED COMPLAINT - 10

Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001

3.16   At times, however, the U.S. Armed Services activates individuals, like Mr. Hall, for military duty which, in turn, makes it more difficult for L-3 to schedule pilots for its overseas rotations.

3.17   Because military reserve activations sometimes cause L-3 S4 Program managers difficulty in scheduling, those managers openly exhibit hostility towards employees who are current or active members of the National Guard or Reserve.

3.18   During a September 2012 L-3 new pilot orientation session in Greenville, Texas, Mr. Berrault asked L-3 employee Justin Bridges-Crawford (a newly hired L-3 pilot who previously served in the U.S. Air Force) whether he (Crawford) was in the military reserves.  When Mr. Bridges-Crawford replied "no" Mr. Berrault said "reservists are always trying to get over and get out of work."

3.19   In August 2013, during Mr. Hall's L-3 new pilot orientation session, Mr. Hall informed Ms. Holland, L-3 S4 Program's "Chief Scheduler," that Hall had a military reserve obligation with the Air National Guard.  In response Ms. Holland angrily remarked "you're one of those Guard guys who gets to go home whenever he wants."

3.20   Ms. Holland, in retaliation for Mr. Hall informing her of his military commitment, delayed Mr. Hall's processing into the L-3 program which, in turn, caused Mr. Hall to lose pay and benefits.

THIRD AMENDED COMPLAINT - 11

Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001

3.21  By way of comparison, upon information and belief, the other seven non-military reserve pilots in Mr. Hall's new employee orientation class were allowed to wait for their rotation to begin *while* collecting pay whereas Mr. Hall *was not* afforded pay while he waited for his rotation to begin.

3.22  During 2013, Mr. Hall's Air National Guard service did not affect Mr. Hall's L-3 schedule, as he was able to perform military duty during times when he was not working Afghanistan as an employee of L-3.

3.23  During 2014, however, Mr. Hall's military service affected his work schedule.

3.24  In about January 2014, L-3 VERTEX sent a 2013 Tax Form W-2 to Mr. Hall at his Spokane, Washington area residence.

3.25  On or about October 10, 2014, Mr. Hall informed L-3 of upcoming (December 2014 – January 2015) military duty.

3.26  Mr. Hall's military orders for the above timeframe began on or about December 6, 2014 and ran through January 31, 2015.

3.27  Mr. Hall served honorably in the military from approximately December 6, 2016 to January 31, 2016.

THIRD AMENDED COMPLAINT - 12

Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001

3.28   On or about December 22, 2014, Mr. Hall texted Mr. Root, requested re-employment, and informed Mr. Root that he (Hall) would be able to be on-site on February 5, 2015 and perform his duties as a L-3 pilot.

3.29   On January 2, 2015, Mr. Hall emailed Ms. Holland and requested to return to work on February 5, 2015.   In that email request, Mr. Hall informed Ms. Holland that his Air National Guard unit had been overwhelmed by non-forecast deployments.

3.30   On January 6, 2015, Ms. Holland informed Mr. Hall, via email, that L-3 was "very short on pilots" in January – February 2015 and stated L-3 needed Mr. Hall "on site next week."

3.31   On January 6, 2015, Mr. Hall informed Ms. Holland, via email, that his military orders would not end until January 31, 2015.

3.32   On January 15, 2015, Mr. Hall again requested re-employment and, that same day, Ms. Holland informed Mr. Hall, via email, that she was "waiting PM approval on a 30 day rotation" and stated she did not "have any manning needs for the month of March so I can't send you out there for 60 days."

3.33   On at least January 21, 23, and 26, 2015, Mr. Hall requested, through Mr. Root, that he be re-employed with L-3.

THIRD AMENDED COMPLAINT - 13

Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001

3.34   On January 26, 2015, Mr. Root rejected Mr. Hall's request for reemployment saying that he was "not able to get" Mr. Hall's "tour approved."

3.35   As of January 26, 2015, however, at least three L-3 pilot openings existed for which Mr. Hall was qualified.

3.36   In about January 2015, L-3 VERTEX and L-3/CIS sent 2014 W-2 Tax Forms to Mr. Hall at his Spokane, WA area residence.

3.37   In early February 2015, Justin Bridges-Crawford, one of Mr. Hall's L-3 S4 co-worker pilots, asked Mr. Campbell why Mr. Hall was not at work.

3.38   Mr. Bridges-Crawford asked that question because the S4 Program was short on personnel and working additional hours.

3.39   For example, S4 pilot Greg Lufker had been sent home for unspecified reasons, S4 pilot Mike Day quit, and the S4 Program's hours were increased due to another L3 program's in-country requirements in Afghanistan.

3.40   Mr. Bridges-Crawford, in Mr. Campbell's office, said words to the effect of "why don't we bring Mitch out here."  In response, Mr. Campbell stated "Mitch is all about Mitch . . . because Mitch went on military orders when we needed him around for the holidays."  Mr. Bridges-Crawford informed Mr. Campbell that Mr. Hall lost money because of his holiday military duty and informed Mr. Campbell that "Mitch is ready to come to Afghanistan" because he is "off military orders."

THIRD AMENDED COMPLAINT - 14

Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001

3.41   Mr. Campbell replied "just because Mitch gets off orders doesn't mean he can come back to work here just because he wants to."

3.42   As of February 12, 2015, L-3's web site reflected that there were at least three L-3 pilot openings for work in Afghanistan.

3.43   In March 2015, L-3 required Mr. Hall to obtain a travel visa for Afghanistan for his employment.  L-3 directed Mr. Hall to obtain the travel visa, delivered required documents for the visa to Mr. Hall in Washington State, and paid him for that work he performed in Washington State.

3.44   Mr. Hall continued to request re-employment with L-3, and, during that process Mr. Hall gave L-3 notice of additional upcoming military obligations, including through the following e-mail:

> **From:** mitch hall [mailto:jmitchhall@gmail.com]
> **Sent:** Wednesday, April 29, 2015 8:28 PM
> **To:** Holland, Kathy @ AS - C3ISR
> **Cc:** Root, Chris @ AS - C3ISR
> **Subject:** my revised rotations
>
> Hi Kathy,
>
> I had a couple of questions regarding my upcoming rotations.  It looks like both of my next two R&R's are short by 9 and 11 days.  Since I require 60 days at home to maintain my currencies with the ANG, shorting those R&R's makes it very difficult to keep up with my obligations here.  I don't mind extending for you anytime you need but I really do need to have a full 60 when I'm home.

THIRD AMENDED COMPLAINT - 15

Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001

Thanks for your understanding.

Mitch

3.45   In response to Mr. Hall's email, Mr. Root replied:

**From:** <Chris.Root@l-3com.com>
**Date:** April 30, 2015 at 8:09:23 AM PDT
**To:** <jmitchhall@gmail.com>, <Kathy.Holland@l-3com.com>
**Cc:** <David.Akers@l-3com.com>
**Subject: RE: my revised rotations**
Hi Mitch,

We will do our best to help you schedule your guard unit responsibilities but there are company scheduling goals as well. We do see ourselves as your primary employer. We have a legal obligation and a corporate policy to adjust our schedules based on the Military Orders you receive but not every convenient unit activity available. We also have a Program Policy to rotate the employees that work the Christmas holiday each year. In order to accomplish that goal, we do have to adjust the 60/60 rotations up to 10 days each rotation, as I tell every applicant in the telephone interview. If we adjust your schedule out for straight 60 day R and R's you would be stuck in a schedule that locks you in to working Christmas every year, which is not our goal. At this point, we will not be adjusting your current schedule based on Military responsibilities without receiving orders from the Government. Thanks for your understanding,

Chris Root
Chief Pilot – S4
L3 Communications
C$^3$ ISR Services
Chris.root@l-3com.com
O: (469) 698-8206
M: (903) 217-9572

THIRD AMENDED COMPLAINT - 16

Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001

3.46   To take military leave and preserve his right to reemployment after his military leave under USERRA, Mr. Hall was only required to provide simple oral or written notice of his military obligations, and that notice "may be informal and does not need to follow any particular format."   20 C.F.R. §1002.85(c). Thus, L-3's refusal to accommodate Mr. Hall's schedule without Mr. Hall providing L-3 with formal military orders violates USERRA.

3.47   Although L-3 professes to afford pilots a 10 days per year "differential pay" bonus (which covers the difference between a service-member's lower paying military job and his or her higher paying L-3 job), L-3 has not paid that benefit to Mr. Hall.

3.48   Upon information and belief, the U.S. Government (as is standard practice with certain Department of Defense contracts) reimburses and/or funds L-3 the 10 days per year "differential pay." Or, put differently, L-3 does not pay its military reserve employees the 10 day per year differential bonus of its own resources, and instead the American taxpayer does.

3.49   L-3 did not employ Mr. Hall for the February – April 2015 rotation, even though work was available to work throughout that period of time.

3.50   L-3 did re-employ Mr. Hall on or about May 12, 2015.

THIRD AMENDED COMPLAINT - 17

Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001

3.51   L-3's re-employment of Mr. Hall in May 2015 does not cure its February 2015 USERRA violation, as prompt reemployment requires an employer to reemploy a servicemember within two weeks of his request for reemployment. 20 C.F.R. § 1002.181.

3.52   Had Mr. Hall not been called to military duty, he would have been promoted to a "Safety Officer" position, which, in turn, would have increased Mr. Hall's monthly pay by approximately $60.00 per day.

3.53   Randall Gladney, the S-4 Program Site Lead, told Mr. Hall in the early-July 2015 timeframe that Mr. Hall did not receive a promotion for the Safety Officer promotion because Mr. Hall was "not reliable" given that Mr. Hall was gone too much because of his military obligations.

3.54   Throughout his employment, L-3 paid or reimbursed Mr. Hall for mileage, travel and plane tickets for Mr. Hall to travel from his residence in Washington to locations where he was needed for work at L-3.

3.55   In August, L-3 required Mr. Hall to obtain a U.S. Government Contractors Identification card for his employment.   L-3 directed Mr. Hall to obtain the identification card at the nearest Real-Time Automated Personnel Identification System (RAPIDS) site, Fairchild Air Force Base, Washington, and L-3 paid him for that work he performed in Washington State.

THIRD AMENDED COMPLAINT - 18

Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001

3.56    On August 31, 2015, after L-3 was given notice of this pending lawsuit, Dennis Dickerson, Director, C3 ISR Services, L-3 Communications, contacted Mr. Hall's commanding officer at Fairchild Air Force Base to "confirm" Mr. Hall's active duty and leave request.    This is the first time L-3 has questioned Mr. Hall's military obligations through his command.

**(Nathan Kay)**

3.57    On or about October 3, 2014 Mr. Kay (while in the State of Washington) applied, online, for employment with L-3 as a "Basic Pilot."

3.58    During that timeframe Benjamin Jones, a pilot in Mr. Kay (and Mr. Hall's) Air National Guard unit also applied for employment with L-3 as a pilot.

3.59    At the time of their applications, neither Kay nor Jones had been previously been employed by any of the Defendants or an entity controlled or related to any of the Defendants.

3.60    On his online application, Mr. Kay, who exceeded the minimum qualifications for the job, noted that he was currently a member of the Washington Air National Guard.

3.61    Upon information and belief, Mr. Jones also exceeded the minimum qualifications for the L-3 pilot job for which he applied.

THIRD AMENDED COMPLAINT - 19

Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001

3.62  On December 22, 2014, Mr. Hall (who is in the same Air National Guard unit as Nate Kay) asked Mr. Root whether he (Root) had reviewed Nate Kay's resume.

3.63  Upon information and belief, both Mr. Campbell and Ms. Holland considered Mr. Kay's employment application but rejected it, in part, because of Mr. Kay's reserve military status.

3.64  As of January 13, 2015, at least nine pilot openings existed at L-3, all of which Mr. Kay and Mr. Jones were qualified to fill.

3.65  As of February 17, 2015, the Basic Pilot position remained open.

3.66  L-3 never employed Mr. Kay.

3.67  L-3 never employed Mr. Jones.

3.68  There have been approximately 15,000 applicants for pilot positions with L-3 since 2011.

3.69  There were hundreds of applicants for the positions that Hall and Kay applied for in 2013 and 2014.

3.70  During the same period of time, more than 10 other individuals who applied to work as pilots at L-3 identified their current status in the National Guard or reserve in their application materials but were rejected or not hired by L-3.

THIRD AMENDED COMPLAINT - 20

Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001

3.71   A sample of approximately 200 applications for pilot positions at L-3, produced by Defendants in this litigation, shows that pilot applicants who *at the time of their applications* were current or active National Guard or reserve members and were not already employed by L-3 or employed by a contract or company being absorbed, acquired, or taken over by L-3 or a L-3 related entity ("non-lateral applicants") had a substantially lower chance of obtaining employment as a pilot at L-3 compared to other pilot applicants in the same group of applicants.   In the pool of approximately 200 applicants who applied for 31 positions, L-3 hired thirty one (31) pilots.   At least 25 of the non-lateral 205 applicants (about one out of eight) were current or active National Guard or reserve members at the time of their applications. Of the non-lateral applicants who were hired, only two applicants identified in their applications that they had current or active reserve or National Guard obligations.

3.72   Within the sample of approximately 200 applicants produced by Defendants, the total number of current or active National Guard or reserve members who were rejected or not hired for a pilot position at L-3 is at least 30.

3.73   In the same sample of approximately 200 applicants, the rate at which L-3 hired non-lateral pilot applicants who at the time of their applications were current

THIRD AMENDED COMPLAINT - 21

Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001

or active National Guard or reserve members is significantly lower than the rate at which L-3 hired other non-lateral pilot applicants.

3.74   Upon information and belief, Defendants have a pattern, policy, or practice of preferring to hire non-lateral pilot applicants who *are not* current or active National Guard or Reserve members over non-lateral pilot applicants who *are* current or active National Guard or Reserve members.

3.75   Upon information and belief, the rate at which Defendants have hired non-lateral pilot applicants who *are not* current or active National Guard or Reserve members at the time of their applications is significantly higher than the rate at which Defendants have hired non-lateral pilot applicants who *are* current or active National Guard or Reserve members.

3.76   Upon information and belief, other pilots who applied to L-3's MARSS program were denied an employment interview and employment due to their military service or status once L-3 learned that those applicants were current or active National Guard or Reserve members.

3.77   Upon information and belief, other pilots who applied to L-3's S4 program were denied an employment interview and employment due to their military service or status once L-3 learned that those applicants were current or active National Guard or Reserve members.  For example, upon information and belief, a

THIRD AMENDED COMPLAINT - 22

Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001

former L-3 S4 Program pilot who worked for L3 in the 2012-2015 timeframe ("former pilot") recommended that L-3 hire another individual who was a member of the Air National Guard; the former pilot informed, or caused to be informed, L-3's management that the Air National Guard member was a reservist who was looking for work as a sensor operator; the Air National Guard member met the minimum qualifications for the sensor operator position for which he applied; and he applied for work with L-3, but was not afforded an interview by L-3.

3.78   During the November 2014 timeframe, the same former pilot telephoned Kathy Holland, L-3 S4 Program's "Chief Scheduler," about an upcoming rotation, and during that telephone call Ms. Holland expressed anger that military reservists were causing scheduling difficulties for L-3.

3.79   Although required by federal law, 38 U.S.C. § 4334, L-3 does not maintain (at the appropriate workplaces) the federally-mandated poster that informs employees of their rights and employers of their obligations under USERRA.

3.80   At all times relevant hereto, L-3 had a duty to conduct itself in compliance with the law, including USERRA, and ensure that its agents followed USERRA. The above actions by L-3 and its agents violated those duties and caused Plaintiffs to suffer damages.

THIRD AMENDED COMPLAINT - 23

Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001

## IV.    CLASS ACTION ALLEGATIONS

4.1    Plaintiffs re-alleges the above paragraphs.

4.2    Plaintiff Nathan Kay brings this action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), on behalf of the following persons:

**National Class ("Class" or "National Class')**

All persons who applied to work as pilots at L-3 since January 1, 2011, who

> (1) at the time of his or her application was an active or current member of the National Guard or Reserve; and

> (2) at the time of his or her application was not employed by any of the Defendants or employed by a contract or company being absorbed, acquired, or taken over by the Defendants (a non-lateral applicant); and

> (3) was not hired for one or more position(s) as a pilot due to his or her status or service in the National Guard or Reserve.

**<u>Washington State Subclass</u>:**

All persons who, while residing or working in the State of Washington, applied to work as pilots at L-3 since January 1, 2011, who

> (1) at the time of his or her application was an active or current member of the National Guard or Reserve; and

THIRD AMENDED COMPLAINT - 24

Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001

(2) at the time of his or her application was not employed by any of the Defendants or employed by a contract or company being absorbed, acquired, or taken over by the Defendants (a non-lateral applicant); and

(3) was not hired for one or more position(s) as a pilot due to his or her status or service in the National Guard or Reserve.

Excluded from the National Class and the Washington Subclass are all former or current pilots who previously reached settlements with or judgments against Defendants in their individual USERRA and/or WLAD actions regarding the practices challenged in this action.

**Impracticability of Joinder**

4.3     The class is so numerous that joinder of all members is impracticable. The exact size of the class is not known.   Upon information and belief, the class consists of over 100 persons and may include hundreds of persons.

4.4     Upon information and belief, the members of the Proposed Class, who applied for employment with L-3, are geographically dispersed throughout the United States.

THIRD AMENDED COMPLAINT - 25

Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001

**<u>Commonality</u>**

4.5     Upon information and belief, the class members were subjected to and injured by the same pattern, practice or policy of L-3 preferring to hire non-lateral pilot applicants who *are not* current or active National Guard or Reserve members over non-lateral pilot applicants who *are* current or active National Guard or Reserve members ("the challenged practice').  There are numerous questions of law or fact that are common to the class members, including the following:

      i.    Whether L-3 engaged in the challenged practice;

      ii.    Whether  the challenged practice violates USERRA, 38 U.S.C. § 4311;

      iii.    What types of compensation and benefits the class members were denied due to the challenged practice?

      iv.    Whether, in engaging in the challenged practice, L-3 either knew or showed reckless disregard for whether its conduct was prohibited by USERRA such that the class members are entitled to receive liquidated damages under USERRA. 38 U.S.C. § 4323(d) and 20 C.F.R. § 1002.312(c).

THIRD AMENDED COMPLAINT - 26

Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001

**Typicality**

4.6    The claims of the Named Plaintiff Kay are typical of the claims of the Plaintiff class he seeks to represent.  The claims of Named Plaintiff Kay arise from the same challenged practice and rely upon the same legal theory that the challenged practice violates USERRA, 38 U.S.C. § 4311(a) & (b).

**Adequacy of Representation**

4.7    Named Plaintiff Kay will adequately represent the members of the Class, does not have any conflicts with the other class members, and is represented by experienced counsel who have substantial experience in USERRA and employment class action litigation and who will vigorously prosecute the action on behalf of the class.

**Rule 23(b)(3)**

4.8    This action is properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

4.9    The questions of law and fact common to the members of the class predominate over questions affecting individual class members, and a class action is superior to other available methods for the fair and efficient resolution of this controversy.

THIRD AMENDED COMPLAINT - 27

Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001

4.10  By resolving the common issues described above in a single class proceeding, each member of the proposed class will receive a determination of whether L-3 engaged in a pattern, practice or policy of preferring to hire non-lateral pilot applicants who *are not* current or active National Guard or Reserve members over non-lateral pilot applicants who *are* current or active National Guard or Reserve members, and whether that challenged practice violates USERRA.

4.11  Members of the proposed class do not have a significant interest in individually controlling the prosecution of separate actions.

4.12  No litigation concerning the challenged practice has been commenced by any member of the class other than the Named Plaintiffs.

4.13  Concentration of the litigation in this forum is desirable, as this action challenges a company-wide practice and it will benefit the class members and L-3 to have all of the class members' claims adjudicated in a single proceeding.

4.14  This class action can be managed without undue difficulty because the issues presented are common to the class.

THIRD AMENDED COMPLAINT - 28

Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001

# V.    CAUSES OF ACTION

## COUNT I: VIOLATION OF USERRA, 38 U.S.C. § 4311
### (All Plaintiffs against Defendants for Discrimination in Initial Employment)

5.1    Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 4.14 as if fully set forth herein.

5.2    Plaintiffs bring this claim on their own behalf and Plaintiff Kay brings this claim on behalf of all members of the Proposed Class.

5.3    Under USERRA, "[a] person who is a member of . . . has performed . . . or has an obligation to perform service in a uniformed service shall not be denied initial employment . . . or any benefit of employment by an employer on the basis of that membership, . . . performance of service, . . . or obligation."  38 U.S.C. § 4311(a).   "An employer shall be considered to have engaged in" such actions "if the person's membership, . . . service, . . . or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, . . . service, . . . or obligation for service."  *Id.* § 4311(c).

5.4    Under USERRA, service in the National Guard or a Reserve component of the Armed Forces constitutes "service in the uniformed services." 38 U.S.C. § 4303(13), (16), and is protected by the Act.

THIRD AMENDED COMPLAINT - 29

Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001

5.5    Upon information and belief, by engaging in a pattern, practice or policy of preferring to hire non-lateral pilot applicants who *are not* current or active National Guard or Reserve members over non-lateral pilot applicants who *are* current or active National Guard or Reserve members, L-3 violated USERRA by denying (or  in the case of Plaintiff Hall, delaying) "initial employment" and "benefit[s] of employment" on the basis of such National Guard or reserve members' "membership," "performance of service" and/or "obligation to perform service in a uniformed service," 38 U.S.C. § 4311(a), and in particular by making such reservists' "membership" "service," and/or "obligation for service in the uniformed services" "a motivating factor in" Defendants' denial of or delaying initial employment.  38 U.S.C. § 4311(c).

5.6    Upon information and belief, L-3 would not have denied initial employment to non-lateral reservists "in the absence of [their] membership . . . service, . . . or obligation for service" in the uniformed services.  38 U.S.C. § 4311(c).

5.7    L-3 violated USERRA § 4311(a) by using Mr. Kay's status and service in the Air National Guard as a motivating factor in deciding to deny him initial employment and by using Mr. Hall's status and service in the Air National Guard as a motivating factor in deciding to delay his initial employment.

THIRD AMENDED COMPLAINT - 30

Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001

5.8    At all relevant times hereto, L-3 maintained contracts with the United States Government that required L-3 to follow the requirements and provisions of USERRA, including 38 U.S.C. §§ 4311, 4312, 4313, and 4316.

5.9    The L-3 Managers and Directors who had responsibly over the employment decisions at L-3 during the time frame alleged in this Complaint had access to the requirements imposed upon employers under the USERRA, including, but not limited to, posted USERRA workplace notices and L-3's applicable employment policies or procedures.

5.10    The persons charged with employment-related decisions at L-3 during the time frame alleged in this Complaint were familiar with the requirements imposed upon employers under USERRA.

5.11    Defendants either knew or showed reckless disregard for whether their conduct was prohibited by USERRA, and their conduct was willful, as defined by 38 U.S.C. § 4323(d)(1)(C), 20 C.F.R. § 1002.312(c), as Defendants were given notice that their intended actions violated the law and Defendants carried out such unlawful conduct with knowledge and responsibility that their actions were not incompliance with USERRA.  As such, liquidated damages are available and warranted under 38 U.S.C. § 4323(d)(1)(C).

THIRD AMENDED COMPLAINT - 31

**COUNT II: VIOLATION OF THE WASHINGTON LAW AGAINST
DISCRIMINATION, RCW 49.60.180(1), (3)
(Plaintiff Kay and All Members of the Washington Subclass
Against Defendants for Discrimination in Hiring)**

5.12    Plaintiff Kay repeats and re-alleges the allegations set forth in paragraphs 1 through 5.11 as if fully set forth herein.

5.13    The Washington Law Against Discrimination ("WLAD") makes it "for any employer" "[t]o refuse to hire any person because of . . . honorably discharged veteran or military status," RCW 49.60.180(1), or "[t]o discriminate against any person in compensation or any other terms or conditions of employment because of . . . honorably discharged veteran or military status[.]"  RCW 49.60.180(3). Under the WLAD, an "honorably discharged veteran or military status" includes "a person who is" "[a]n active or reserve member in any branch of the armed forces of the United States, including the national guard, coast guard, and armed forces reserves."  RCW 49.60.040(15).

5.14    Upon information and belief, by engaging in a pattern, practice or policy of preferring to hire non-lateral pilot applicants who *are not* current or active National Guard or Reserve members over non-lateral pilot applicants who *are* current or active National Guard or Reserve members and/or denying employment to non-lateral pilot applicants who are current or active National Guard or Reserve

THIRD AMENDED COMPLAINT - 32

Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001

members, L-3 violated the WLAD with respect to Mr. Kay and members of the proposed Washington State Subclass by refusing to hire or otherwise discriminating against such National Guard or Reserve members based because of their "honorably discharged veteran or military status."  RCW 49.60.180(1), (3). The honorably discharged veteran or military status of the members of the Washington Subclass was a substantial factor in Defendants' refusing to hire, or otherwise discriminating against Plaintiff Kay and the members of the Washington Subclass.

5.15   Mr. Kay's honorably discharged veteran or military status was, as described above, a substantial factor in Defendants' decision to deny him employment.

### COUNT III: VIOLATION OF USERRA,
### 38 U.S.C. §§ 4312, 4313, 4316
### (Plaintiff Hall against Defendants for Failure to Reemploy Him)

5.16   Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 5.15 as if fully set forth herein.

5.17   Under USERRA, "any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of [USERRA]," if the person "has given advance written or verbal notice of such service to such person's employer," the "cumulative length of the absence and of

THIRD AMENDED COMPLAINT - 33

Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001

all previous absences from a position of employment with that employer by reason of service in the uniformed services does not exceed five years," and the "person reports to, or submits an application for reemployment to, such employer[.]"  38 U.S.C. § 4312(a).

5.18   Under USERRA, if a person is entitled to reemployment under § 4312, the person must be reemployed "in the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service," or "a position of like seniority, status and pay[.]" 38 U.S.C. §§ 4313(a)(1)(A), (a)(2)(A).

5.19   Under USERRA, a person who is entitled to reemployment "is entitled to the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service in the uniformed services plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed."   38 U.S.C. § 4316(a).

5.20   Mr. Hall was entitled to reemployment under § 4312, but he was denied reemployment under § 4312, a reemployment position under § 4313(a), and the rights and benefits associated with a reemployment position under § 4316(a).

5.21   Mr. Hall gave L-3 notice of his military obligations in October 2014.

THIRD AMENDED COMPLAINT - 34

Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001

5.22   Mr. Hall's cumulative length of uniformed service during his employment at L-3 (December 6, 2014 to January 31, 2015) did not exceed five years.

5.23   Mr. Hall served honorably during the above timeframe.

5.24   Mr. Hall gave L-3 notice of his intent to return to work on, among other days, December 22, 2014, January 2, 15, 21, 23 and 26, 2015.

5.25   Upon Mr. Hall's satisfying of USERRA's re-employment criteria L-3 was required to re-employ Mr. Hall in either his (a) pre-deployment position (b) a position similar the pre-service position in like seniority, status, and pay, or (c) the next closet position.  38 U.S.C. § 4313(a).

5.26   By failing to promptly re-employ Mr. Hall in February 2015, L-3 violated USERRA's re-employment provisions, including 38 U.S.C. §§ 4312, 4313, and 4316.

5.27   USERRA requires a servicemember to be reemployed "as soon as practicable under the circumstances" and ordinarily "reemployment must occur within two weeks of the employee's application for reemployment.  20 C.F.R. § 1002.181.

5.28   Defendants violated 38 U.S.C. § 4316, among other ways, by denying Mr. Hall the seniority and-non seniority benefits provided by Defendants to his non-military peers, such as, without limitation, prompt reemployment that Defendants

THIRD AMENDED COMPLAINT - 35

Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001

provided to individuals who take family or medical leave pursuant to the Family Medical Leave Act.

5.29    As described above, Defendants' violations of USERRA were willful. With respect to Plaintiff Hall's reemployment claim under 38 U.S.C. §§ 4312, 4313, and 4316, Defendants knew their obligations to reemploy Plaintiff Hall under §§ 4312, 4313, and 4316, yet acted with knowledge or reckless disregard for whether their conduct was prohibited by USERRA §§ 4312, 4313, and 4316.

## COUNT IV: VIOLATION OF USERRA, 38 U.S.C. § 4318
### (Plaintiff Hall against Defendants)

5.30    Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 5.29 as if fully set forth herein.

5.31    USERRA § 4318 sets forth "the right to pension benefits of a person reemployed" under USERRA. 38 U.S.C. § 4318(a)(1)(A).  Returning veterans must be treated "as not having incurred a break in service with the employer [] by reason of such person's period or periods of service in the uniformed services[,]" *id.* §4318(a)(2)(A), making an employer "liable to an employee pension benefit plan for funding any obligation of the plan to provide the benefits" for a veteran's period of military service.  *Id.* § 4318(b)(1). An employer must make its "employer contribution for the person in the same manner and to the same extent

THIRD AMENDED COMPLAINT - 36

Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001

the allocation occurs for other employees during the period of service." *Id.* § 4318(b)(2).   When an employer's pension contribution is contingent upon an employee making his or her own contribution to a pension plan (*i.e.*, a matching contribution), the employer must make the contribution when the employee makes his or her own contribution, and thus must allow the employee to make such a contribution.  38 U.S.C. § 4318(b)(2).

5.32   Under Defendants' pension plan, Defendants were required to match up to 3% of Hall's earnings, so long as Hall made contributions of up to 3% of his earnings.

5.33   Defendants violated 38 U.S.C. § 4318, among other ways, by denying Mr. Hall the right to make contributions to his pension plan for the period of his military service, and by failing to give timely and adequate notice to the plan administrator, as required by USERRA.

5.34   Department of Labor regulations require make-up contributions under USERRA to be made within 90 days after reemployment.   20 C.F.R. §1002.262(a).

5.35   As described above, Defendants' violations of USERRA were willful. With respect to Plaintiff Hall's USERRA pension claim under § 4318, Defendants knew their obligations to inform Plaintiff Hall of his right to make pension

THIRD AMENDED COMPLAINT - 37

Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001

contributions for the period of his military service, to match any contribution of Plaintiff Hall, and inform the pension plan administrator about Plaintiff Hall's USERRA rights, yet Defendants acted with knowledge or reckless disregard for whether their conduct was prohibited by USERRA § 4318.

## VI.   PRAYER FOR RELIEF

6.1   Plaintiffs respectfully ask this Court to grant them the following relief:

a. Declare that Defendants' actions violated USERRA and the WLAD, and permanently enjoin Defendants from engaging in such violations.

b. Certify this action as a class action under Fed. R. Civ. P. 23(a) and (b)(3).

c. Designate Named Plaintiff Kay as a Class Representative pursuant to Fed. R. Civ. P. 23(c).

d. Appoint the undersigned as class counsel pursuant to Fed. R. Civ. P. 23(c) & (g).

e. Award the Members of the National Class both economic damages in the amount to be proven at trial, and award the Members of the Washington State Subclass economic and non-economic damages available under Washington State law, including lost wages, back pay, front pay, lost benefits of employment, negative tax consequences of any award,

THIRD AMENDED COMPLAINT - 38

Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001

liquidated damages, exemplary damages, prejudgment interest, and punitive

damages, as provided by law.

f.    Award reasonable attorneys' fees, litigation expenses, and costs, pursuant to

38 U.S.C. § 4323(h), and as otherwise provided by law.

g.    Award any and all appropriate equitable relief, including reinstatement and

recoupment of any loss of wages or benefits. 38 U.S.C. § 4323(d)(1)(A)(B).

h.    Declare that Defendants' violations of USERRA were unlawful and

violated USERRA, 38 U.S.C. §§ 4311, 4312, 4313, 4316.

i.    Declare that Defendants' violations of USERRA were willful pursuant

to 38 U.S.C. § 4323(d)(1)(C).

j.    Order such other relief as may be just and proper.


March 15, 2017                    Respectfully submitted,


                                  */ s / Peter Romer-Friedman*
                                  PETER ROMER-FRIEDMAN
                                  Outten & Golden LLP
                                  601 Massachusetts Ave. NW
                                  Second Floor West
                                  Washington, DC 20001
                                  Telephone (202) 847-4400
                                  prf@outtengolden.com


THIRD AMENDED COMPLAINT - 39                    Outten & Golden LLP
                                                601 Massachusetts Ave. NW
                                                Second Floor West
                                                Washington, DC 20001

/ s / Thomas G. Jarrard

THOMAS G. JARRARD
The Law Office of Thomas G. Jarrard, PLLC
1020 N. Washington
Spokane, WA 99201
Telephone: (425) 239-7290
tjarrard@att.net

/ s / Matthew Z. Crotty

MATTHEW Z. CROTTY
Crotty & Son Law Firm, PLLC
905 West Riverside, Suite 409
Spokane, WA 99201
Telephone: (509) 850-7011
matt@crottyandson.com

/ s / Michael B. Love

MICHAEL B. LOVE
Michael Love Law Firm, PLLC
905 W. Riverside, Suite 409
Spokane, WA  99201
Telephone:  (509) 212-1668
mike@mikeallovelaw.com

Attorneys for Plaintiffs

THIRD AMENDED COMPLAINT - 40

Outten & Golden LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001